**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES K. BISHOP,<br><br>Plaintiff,<br><br>vs.<br><br>OHIO DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | : | Case No. 2:26-cv-00025<br><br>District Judge Edmund A. Sargus, Jr.<br>Magistrate Judge Caroline H. Gentry |

**ORDER AND**
**REPORT & RECOMMENDATION**

Plaintiff is an inmate incarcerated at the Noble Correctional Institute ("NCI") who is proceeding without the assistance of counsel. He has filed a civil rights lawsuit in this Court pursuant to 42 U.S.C. § 1983. By separate order, Plaintiff was granted leave to proceed *in forma pauperis* and without the prepayment of fees. (ECF No. 3).

This matter is before the undersigned Magistrate Judge to conduct the required initial screen of Plaintiff's Complaint. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). For the reasons set forth below, the undersigned **ORDERS** that Plaintiff may **PROCEED** with his First Amendment retaliation claims against Defendants Love and Cobb in their individual capacities. The undersigned further **RECOMMENDS** that the District Judge **DISMISS** all remaining claims in Plaintiff's Complaint.

# I. LEGAL STANDARDS

## A. Requirement To Screen Plaintiff's Complaint

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court must screen the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners").

The Court is also required to screen the Complaint because Plaintiff is proceeding *in forma pauperis*. Congress enacted 28 U.S.C. § 1915, the *in forma pauperis* statute, for the purpose of "lower[ing] judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 5, 31 (1992). However, "Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id*. (internal quotations and citation omitted). Therefore, the Court must dismiss an *in forma pauperis* complaint to the extent it "determines that the action … (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**B. Determining That a Complaint Is Frivolous**

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of being irrational or 'wholly incredible.'" *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009).

**C. Determining That a Complaint Fails to State a Claim Upon Which Relief May Be Granted**

The Court is also required to dismiss complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1). To avoid dismissal under this standard, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that

the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under §§ 1915A(b)(1) and 1915(e)(20(B)(ii)"). Thus, the complaint must include factual allegations that are both ***well-pleaded*** and ***plausible***.

Factual allegations are well-pleaded if they are specific and support the plaintiff's claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept "non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations … that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (internal quotations and citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678. In addition, a "complaint must contain either direct or inferential allegations respecting all the material elements" of a claim "to

sustain a recovery under *some* viable legal theory." *Columbia v. Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis in original).

### D. Liberal Construction of *Pro Se* Complaints

Plaintiff is representing himself *pro se* – that is, without the assistance of counsel. This Court is required to liberally construe a *pro se* complaint and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in order] to construe a *pro se* petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must adhere to the "basic pleading essentials" and the Court "should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead, the complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff sues the following Defendants in their individual and official capacities: Ohio Department of Rehabilitation and Correction ("ODRC") Director Annette Chambers-Smith[1]; NCI Warden Forshey; NCI C-2 dorm Sergeant T. Love; NCI Inspector Cobb; NCI third shift C-1 dorm Correctional Officer D. Snyder; and NCI third shift C-1 dorm Correctional Officer Triplett. (ECF No. 4 at PageID# 48-49).

[1] Plaintiff refers to this Defendant as Annette Smith-Chambers. (ECF No. 4 at PageID# 48, 49, 57). The undersigned takes judicial notice that the last name of this individual, who is a frequent party to litigation before the Court, is Chambers-Smith.

Plaintiff alleges that on December 18, 2025, Defendant Triplett woke Plaintiff up during the 12:00 a.m. count and asked Plaintiff to turn off his TV. (ECF No. 4 at PageID# 50). Plaintiff immediately complied. However, Defendant Snyder wrote a conduct report charging Plaintiff for having his TV on during the 12:00 a.m. count and for disobeying a direct order—that order was a sign that Snyder posted in the control room window ordering inmates to turn off TVs during counts. (ECF No. 4-4 at PageID# 68). Plaintiff explains that he was asleep at the time his TV was allegedly turned on, and that "when his neighbors turn their TV off/on mine turns off/on." (Id. at PageID# 50 [cleaned up]). Plaintiff states that he could not have turned on his TV, or disobeyed a direct order, while he was asleep.

Plaintiff states that on December 24, 2025, Defendant Love ruled on the conduct report without complying with due process requirements. Specifically, Plaintiff asserts that: (1) Love failed to give Plaintiff written notification of the nature and date of the violation within 24 hours as required by Ohio Admin. Code 5120:1-8-12(E); (2) Love failed to give Plaintiff an opportunity to prepare as required by Ohio Admin. Code 5120:1-8-12(F); and (3) Love failed to investigate the allegations within 24 hours of the incident as required by Ohio Admin. Code 5120:1-8-12(E). Plaintiff states that Defendant Love found Plaintiff guilty and seized Plaintiff's TV for 60 days. (ECF No. 4 at PageID# 50). When Plaintiff stated that he wanted to appeal, Love responded that Plaintiff would have to take up the matter with the regular Sergeant (Mr. Dearth, not named as a Defendant) when he returned.

That same day, Plaintiff filed an informal complaint for "unprofessional conduct" that challenged Defendant Love's failure to follow due process requirements. Defendant Cobb denied the grievance a few days later on the grounds that it was the wrong avenue for appealing Love's decision, "as conduct reports have their own appeal process." (ECF No. 4-3 at PageID# 63). Plaintiff states that the nature of Cobb's denial foreclosed Plaintiff's right to escalate the grievance any further. (ECF No. 4 at PageID# 51). Plaintiff apparently sent multiple kites to Cobb to explain that his intention in filing the "unprofessional conduct" grievance was to challenge Love's violations of due process, not his decision. (ECF No. 4-5 at PageID# 69-73; ECF No. 4-6 at PageID# 74-75).

Plaintiff also appealed to C-1 unit manager Wittekind (not named as a Defendant) to challenge Love's failure to follow due process and to inquire what regulation permitted the seizure of an inmate's personal property. (ECF No. 4-4 at PageID# 68). Although Plaintiff states that Wittekind refused to address both complaints, this contention is contradicted by Plaintiff's own exhibit, in which Wittekind responded, "It is a privilege to be allowed to have a TV. When rules are violated, we restrict those privileges. You can speak with Sergeant Dearth about when you can get your TV back." (*Id.*).

On December 30, 2025, Plaintiff discussed the matter with Mr. Dearth, as he had been advised to do. Defendant Love was present when Plaintiff approached Mr. Dearth. Plaintiff states that Love tried to "intimidate" him by threatening that Plaintiff would "get 90 days of restrictions across the board" the next time he failed to turn off his TV. (ECF No. 4 at PageID# 51; ECF No. 4-3 at PageID# 66-67). Plaintiff contends that Love was

"tired of people writing kites and filing grievances for his actions, and that this is his dorm and he shall rule it, as he sees fit." (ECF No. 4 at PageID# 51).

Plaintiff filed another grievance to challenge "Love's misconduct." (ECF No. 4-6 at PageID# 74). Defendant Cobb denied the grievance but relied, according to Plaintiff, on the wrong ODRC policy. (*Id.*; ECF No. 4 at PageID# 51). Plaintiff alleges that Cobb denied Plaintiff's right to due process and that Cobb's "decisions thwart inmates from taking advantage of the grievance process through Machination, misrepresentation, and/or intimidation." (*Id.* [as in original]).

For relief, Plaintiff seeks: (a) a preliminary and permanent injunction against NCI staff and their agents that orders them to follow ODRC rules to prevent further injuries to inmates and to retrain staff on the proper procedures for conducting hearings on conduct reports; (b) compensatory damages in the amount of $13,000,000 against Defendants' employer; (c) punitive damages in the amount of $50,000 each against Defendants Love, Snyder, Chambers-Smith, Cobb, Forshey, and Triplett; (d) all costs involved with this suit; (e) any other relief that the Court determines to be just, proper, and equitable; and (f) a trial by jury on all issues triable to a jury. (ECF No. 4 at PageID# 58-59).

## III. LAW AND ANALYSIS

Based on the above allegations, Plaintiff asserts seven claims pursuant to 42 U.S.C. § 1983: (1) in Count One, a claim for unnecessary/unreasonable seizure in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution; (2) in Count Two, a claim for malicious prosecution in violation of the Fourth, Eighth, and Fourteenth Amendments; (3) in Count Three, a claim for failure to provide notice in

violation of the Sixth and Fourteenth Amendments; (4) in Count Four, a procedural due process claim based upon a failure to record disciplinary proceedings in violation of the Fourteenth Amendment; (5) in Counts Five and Six, a procedural due process claim based upon a the failure to train or hire competent employees in violation of the Fourteenth Amendment; and (6) in Count Seven, a claim of First Amendment retaliation. (ECF No. 4 at PageID# 51-58). For the reasons set forth below, the undersigned **ORDERS** that Plaintiff may **PROCEED** with Count Seven and **RECOMMENDS** that the District Judge **DISMISS** the remaining claims.

### A. Count One: Seizure of Plaintiff's Television

In Count One, Plaintiff asserts that the temporary seizure and deprivation of his TV was unconstitutional under the Fourth Amendment (unreasonable seizures), the Eighth Amendment (cruel and unusual punishment), and the Fourteenth Amendment (due process). (ECF No. 4 at PageID# 51-56). All these claims fail as a matter of law.

#### 1. Fourth Amendment

As to the Fourth Amendment claim, Plaintiff asserts that it was unreasonable for Defendants to seize his TV because he was asleep when the alleged infractions occurred, and so could not have committed them. He also argues that NCI does not identify seizure of an inmate's TV as a punishment for rules infractions. (ECF No. 4 at PageID# 52).

The Fourth Amendment does not aid Plaintiff because it does not prohibit Defendants from seizing personal property in an inmate's cell. In *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), the Supreme Court rejected a prisoner's Section 1983 claim that challenged the destruction of his legal papers during a search of his cell. In a footnote, the

Supreme Court stated that "the Fourth Amendment does not protect against seizures [of personal property] in a prison cell" and observed that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id*. at 528 n.8 (emphasis added). *Accord Duskin v. Olson*, No. 2:19-cv-155, 2019 WL 4873403, at *8 (W.D. Mich. Oct. 3, 2019) (applying *Hudson* to find that the Fourth Amendment did not prevent corrections officers from confiscating items in plaintiff's cell); *Henderson v. Lindamood*, No. 1:07-55, 2008 WL 4190016, at *4 (M.D. Tenn. Sept. 5, 2008) ("[W]hile an inmate may have certain rights in relation to his property such as the right to a post-deprivation hearing, that right is not protected by the Fourth Amendment."). Because Plaintiff cannot state a Fourth Amendment claim upon which relief can be granted with respect to the seizure of his TV from his prison cell, the undersigned recommends that this claim be dismissed.

**2. Eighth Amendment**

As to the Eighth Amendment claim, Plaintiff argues that the temporary seizure of his TV constituted cruel and unusual punishment because he suffered pain, anxiety, and physical and mental discomfort due to not being able to view his religious shows or to follow the stock market. (ECF No. 4 at PageID# 53).

This claim fares no better. "[T]he Eighth Amendment prohibits punishments which, though not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (cleaned up). Construing Plaintiff's claim liberally and accepting his allegations as true, the Court cannot plausibly infer that Defendant Love's

seizure of Plaintiff's TV as a disciplinary measure for the TV being turned on at an improper time violates the Cruel and Unusual Punishments Clause. "[A]bsent any showing that basic human needs were not met, a denial of privileges does not constitute an Eighth Amendment violation." *Allen v. Alexsander*, No. 19-1315, 2019 WL 4667707, at *2 (6th Cir. Sept. 12, 2019) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)). Even if this disciplinary sanction caused Plaintiff pain, anxiety, and physical and mental discomfort, watching TV is not a basic human need or a constitutional right. *See Rawls v. Sundquist*, 929 F. Supp. 284, 288 (M.D. Tenn. 1996), *aff'd*, 113 F.3d 1235 (6th Cir. 1997) ("There is no constitutional right to television while incarcerated."). Plaintiff therefore has not stated, and cannot state, an Eighth Amendment claim upon which relief can be granted, and the undersigned recommends that this claim be dismissed.

**3. Fourteenth Amendment**

Finally, as to the Fourteenth Amendment claim, Plaintiff argues that seizure of his TV violated due process because it was done for malicious reasons and Defendant Love did not follow the ODRC due process policy. (ECF No. 4 at PageID# 53-55).

This claim also fails. "Procedural due process is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). To state a procedural due process claim, a plaintiff must first identify a liberty or property interest that is protected by the Due Process Clause. *Guba v. Huron Cnty., Ohio*, 695 F. App'x 98, 102 (6th Cir. 2017); *Jergens v. Ohio Dep't of Rehab. & Corr. Adult Parole Auth.*, 492 F. App'x 567, 569 (6th Cir. 2012) (quoting *Swarthout v. Cooke,* 131

S.Ct. 859, 861 (2011)). Without a protected liberty or property interest, a procedural due process claim necessarily fails and the court need not consider the remaining elements of the claim. *Hester v. Chester Cnty., Tennessee*, 162 F.4th 780, 790 (6th Cir. 2025).

The allegations in the Complaint do not give rise to a protected liberty interest. Although "prisoners do not shed all constitutional rights at the prison gate …. [d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). It is only where a prison official "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that the punishment creates a protected liberty interest that supports a procedural due process claim. *Id*. at 484. Because the temporary deprivation of TV is not an atypical and significant hardship, it does not create a protected liberty interest. *See, e.g., Vilardo v. Jordan*, No. 25-5788, 2026 U.S. App. LEXIS 8554, at *5 (6th Cir. Mar. 23, 2026) ("A punishment of thirty days of disciplinary segregation does not implicate a liberty interest"); *Walker v. Jones*, No. 23-1022, 2023 U.S. App. LEXIS 15816, at *4 (6th Cir. June 22, 2023) ("Walker does not possess a protected liberty interest in minor misconduct proceedings.").

Plaintiff also cannot identify a protected property interest. "[C]ourts have held that prisoners do not have a property interest under the Fourteenth Amendment in keeping unspecified personal property in their cells." *Blair v. Kentucky State Penitentiary*, No. 5:21-cv-75, 2022 WL 660792, at *4 (W.D. Ky. Mar. 4, 2022) (cleaned up and citations omitted). Absent a protected liberty or property interest, Plaintiff's Fourteenth Amendment procedural due process claim fails as a matter of law.

Moreover, even if Plaintiff could identify a protected interest, his claim would still fail because the Complaint shows that he received notice and an opportunity to be heard. Specifically: (1) Plaintiff alleges that Defendant "Snyder wrote Bishop a conduct report" on December 18, 2025 (ECF No. 4 at PageID# 50), which is confirmed by the Conduct Report (ECF No. 4-1 at PageID# 60); (2) Plaintiff alleges that Defendant Love reviewed the conduct report on December 24, 2025, and Plaintiff was able to "explain[] he was sleeping and when his neighbors turn their TV off/on mine turns off/on" (Doc. No. 4 at PageID# 50 (cleaned up)); and (3) the Hearing Officer's Report indicated that Plaintiff attended the hearing, was "informed of his right to be heard in his own defense," and did give a statement (Doc. No. 4-2 at PageID# 61). These alleged facts are sufficient to satisfy constitutional due process. *See Shoemaker v. City of Howell*, 795 F.3d 553, 560 (6th Cir. 2015) (quoting *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314 (1950)) ("To satisfy due process under the Constitution, the notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance.'").

Further, although Plaintiff cites the ODRC policy in his Complaint, alleged violations of those rules may not be challenged under Section 1983. *See Shine-Johnson v. Chambers-Smith*, No. 2:22-cv-3236, 2023 WL 3881754, at *2 (S.D. Ohio June 8, 2023), *report and recommendation adopted*, 2023 WL 8372816 (S.D. Ohio Dec. 4, 2023) ("a § 1983 claim cannot be based on a violation of state law or [ODRC] policy"); *see also*

*Percy v. Jabe*, 823 F. Supp. 445, 447 (E.D. Mich. 1993) ("Violations of state statutory time limits without more do not violate a prisoner's federal constitutional rights.").

Finally, to the extent that Plaintiff challenges Defendants' investigation of the charge against him and their handling of his grievances, he fails to state a claim. "[A] prison official's failure to respond to a prisoner's letter or grievance does not state a constitutional claim" because "[a] prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 755 (E.D. Mich. 2009); *accord Willis v. ODRC, Director*, No. 1:22-cv-264, 2022 WL 2063739, at *5 (S.D. Ohio June 8, 2022). Plaintiff therefore has not stated, and cannot state, a Fourteenth Amendment claim upon which relief can be granted.

For all these reasons, the undersigned **RECOMMENDS** that Count One be **DISMISSED with prejudice.**

### B. Count Two: Malicious Prosecution

Plaintiff sues Defendants Snyder and Triplett for malicious prosecution based on Snyder's Conduct Report that his TV was on.[2] (ECF No. 4 at PageID# 56-57). Plaintiff alleges that Snyder conspired to produce a deliberately false and misleading conduct report and failed to investigate whether another inmate accidentally turned on

---

[2] Malicious prosecution claims in federal court typically arise under the Fourth Amendment. *See King v. Harwood*, 852 F.3d 568, 582-283 (6th Cir. 2017) ("[I]ndividuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants."). Although Plaintiff also labels his allegations against Snyder and Triplett as a cruel and unusual punishment claim and a procedural due process claim (ECF No. 4 at PageID 56-57), he fails to state these additional claims against Snyder and Triplett for the same reasons he failed to state them against Love in Count One.

Plaintiff's TV. Plaintiff further alleges that Triplett found Plaintiff's TV on during the 12:00 a.m. count and ordered him to turn it off. (ECF No. 4 at PageID# 50).

One "element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). Assuming *arguendo* that Plaintiff can assert a malicious prosecution claim in the context of prison disciplinary proceedings, he has not pled (and cannot plead) that the disciplinary proceeding was "resolved in [his] favor." (*Cf.* ECF No. 4-2 at PageID# 61). Although Plaintiff blames others for that result, his argument does not change the fact that Plaintiff was found guilty of the conduct violation. Because that fact is fatal to Plaintiff's malicious prosecution claim, the undersigned **RECOMMENDS** that Count Two be **DISMISSED with prejudice.**

### C. Counts Three and Four: Failure to Provide Adequate Notice and to Record the Disciplinary Proceeding

In Count Three, Plaintiff sues Defendants Snyder and Triplett for failing to provide him with a copy of the December 18, 2025, conduct report. (ECF No. 4, at 57). In Count Four, Plaintiff sues Defendant Love for failing to record the hearing on that conduct report. (*Id*.). Plaintiff asserts that these Defendants violated Ohio law, the Sixth Amendment, and the Fourteenth Amendment. (*Id*.). None of these assertions state a claim on which relief may be granted.

As noted above, Plaintiff cannot sue under Section 1983 to seek a remedy for alleged violations of state laws or prison policies. *See Shine-Johnson v. Chambers-*

*Smith*, No. 2:22-cv-3236, 2023 WL 3881754, at *2 (S.D. Ohio June 8, 2023), *report and recommendation adopted*, 2023 WL 8372816 (S.D. Ohio Dec. 4, 2023) ("a § 1983 claim cannot be based on a violation of state law or [ODRC] policy"). Therefore, Defendants' alleged violations of prison policies requiring them to provide the conduct report and record the conduct hearing do not state a federal claim for relief.

Next, Plaintiff cannot state a claim under the Sixth Amendment because it does not apply here. *See Wood v. Chambers-Smith*, No. 2:24-CV-165, 2025 WL 3122830, at *15 (S.D. Ohio Nov. 7, 2025) ("[T]he Sixth Amendment applies only to criminal prosecutions, not to prison disciplinary proceedings") (citing cases).

Finally, as discussed above, Plaintiff does not have a constitutionally protected liberty or property interest sufficient to state a procedural due process claim.

For all these reasons, the undersigned **RECOMMENDS** that Counts Three and Four be **DISMISSED with prejudice.**

### D. Counts Five and Six: Failure to Train or Hire Competent Employees

In Counts Five and Six, Plaintiff sues ODRC Director Annette Chambers-Smith and NCI Warden Jay Forshey for failing to train and/or hire competent employees. (ECF No. 4, at PageID# 57-58). Plaintiff's allegations are primarily legal conclusions without a factual basis. The only factual allegation in the Complaint against Defendant Forshey is that he "is the Warden of [NCI], he is legally responsible for the operation of [NCI] and the welfare of all inmates of the institution." (ECF No. 4 at PageID# 49). With respect to Defendant Chambers-Smith, Plaintiff alleges only that she "is the director of the ODRC and is in charge of all ODRC employees." (*Id*.).

Thus, Plaintiff seeks to hold these Defendants liable solely because of their positions, not because they allegedly played a role in the incidents challenged in the Complaint. Such claims are not legally viable. As this Court explained in another case:

> Plaintiff names ODRC Director Annette Chambers-Smith as a defendant. But he provides no facts to support—or even describe—his claims against her. The only mention of the Director in the body of the Complaint is in the form of a legal conclusion, as follows: "Director Annette Chamber-Smith is directly in violation of failure to train and supervise & superior respondeat of the 1st, 4th, 5th, & 14th Amendment." (Complaint, PageID 110).
>
> This brief allegation fails to state a claim upon which relief can be granted. First, a claim consisting only of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A plaintiff, even one proceeding pro se, must plead sufficient *facts* to show how each defendant allegedly violated plaintiff's rights. *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).
>
> Second, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). For such a claim to proceed, "a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)) (cleaned up). Plaintiff does not allege any facts in the Complaint that satisfy this requirement.
>
> Third, it is well-settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability." *Hinton v. Skipper*, No. 1:21-cv-480, 2021 WL 4859744, at *2 (W.D. Mich. Oct. 19, 2021) (citing *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F.

> App'x 972, 974 (6th Cir. 2011)). There are no allegations here of any allegedly unconstitutional behavior by the Director. Plaintiff's listing of claims against the Director, without providing any facts to support those claims, are insufficient to state plausible claims against her.

*Johnson v. Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 2555446, at *18 (S.D. Ohio Mar. 17, 2023), *report and recommendation adopted,* 2023 WL 6065130 (S.D. Ohio Sept. 18, 2023). The Court's reasoning in *Johnson* applies equally here. The undersigned therefore **RECOMMENDS** that Counts Five and Six be **DISMISSED** without prejudice.

### E. Count Seven: Retaliation/Grievance Procedure

In Count Seven, Plaintiff sues Defendants Love and Cobb for allegedly trying to thwart him "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (ECF No. 4, at PageID# 58). The undersigned concludes that Plaintiff has stated a claim upon which relief can be granted.

The First Amendment prohibits government officials "from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To plead a First Amendment retaliation claim, a plaintiff must allege that:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). At this early stage of the litigation, the Court considers only whether Plaintiff has plausibly pled allegations that

can satisfy this prima facie standard of a retaliation claim. *Walker v. Baker*, No. 23-1232, 2023 WL 6380124, 2023 U.S. App. LEXIS 25579, at *6-9 (6th Cir. Sept. 27, 2023).

At this juncture in the proceedings, without the benefit of discovery or briefing by the parties to this action, the undersigned Magistrate Judge concludes that Plaintiff may **PROCEED** with his claims in Count Seven for First Amendment retaliation against Defendants Love and Cobb. The undersigned emphasizes that the Court has not made any determination as to the merits of this claim or any defenses that Defendants may assert. Further, as discussed in the next section, Count Seven shall proceed against Defendants Love and Cobb solely in their individual capacities.

**F. Monetary Damages against Defendants Love and Cobb**

Plaintiff seeks monetary damages from Defendants Love and Cobb. (ECF No. 4 at PageID# 58-59). As explained below, because Plaintiff is legally barred from recovering damages from Defendants Love and Cobb in their *official* capacities, the Court should limit Plaintiff to seeking damages from these Defendants in their *individual* capacities.

A claim against an individual defendant in his or her official capacity is in essence a claim against the entity that employs him. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent'") (internal citations omitted).

Here, Defendants Love and Cobb are employees or agents of the ODRC, an arm of the State of Ohio. (*See* Complaint, Doc. No. 4 at PageID# 49.) *See also Tolliver v.*

*Chambers-Smith*, No. 2:22-cv-4566, 2023 WL 6622251, at *3 (S.D. Ohio Oct. 11, 2023), *report and recommendation adopted*, 2023 WL 7926522 (S.D. Ohio Nov. 16, 2023) (quoting *Jones v. Swank,* No. 2:11-cv-797, 2012 WL 4107981, at *8 (S.D. Ohio Sept. 19, 2012) ("The ODRC is an arm of the State of Ohio"); *Conant v. Freeman*, No. 2:23-cv-1148, 2026 WL 806761, at *1 (S.D. Ohio Mar. 24, 2026) (so concluding with respect to "Noble Correctional Institution (NCI) Corrections Officers" sued under Section 1983).

Claims against Defendants Love and Cobb in their official capacities, then, are claims against the State of Ohio, which is immune. Put another way:

> The Eleventh Amendment[3] bars suits for damages against states in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). While states are free to waive that immunity, the State of Ohio has not, as a general matter, done so. *See Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 526 (6th Cir. 1985). Official-capacity claims against a given defendant under § 1983 actually run against that defendant's employer. *Colvin v. Caruso*, 605 F.3d 282, 289 (2010) (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.")). Here, the State of Ohio employs the [Defendant corrections officers]. So the Eleventh Amendment bars [the plaintiff's] official-capacity claims.

*Conant*, 2026 WL 806761, at *3. Thus, the undersigned **RECOMMENDS** that claims against Defendants Love and Cobb in their *official capacities* be **DISMISSED with prejudice**, and that Count Seven **PROCEED** against them in their *individual capacities*.

[3] The Eleventh Amendment to the U.S. Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

## IV. CONCLUSION

In sum, for the reasons set forth above, the undersigned Magistrate Judge allows one claim to proceed and recommends that the remaining claims be dismissed for failure to state a claim on which relief may be granted.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff may proceed with the development of his First Amendment retaliation claims in Count Seven against Defendants Love and Cobb in their individual capacities.
2. The Clerk shall send two blank summons and U.S. Marshal forms to Plaintiff to complete for service on Defendants Love and Cobb.
3. Plaintiff shall, **within thirty (30) days** of the date of this Order, submit completed summons and U.S. Marshal forms for Defendants Love and Cobb to the Clerk of Court. Once the Clerk receives the requested forms, the Court will order service of process and the Complaint by the United States Marshal Service. **Plaintiff is ADVISED that failure to comply with this Order may result in the dismissal of this action for want of prosecution.**
4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

**IT IS ALSO RECOMMENDED THAT:**

1. Plaintiff's claims in Counts One, Two, Three and Four be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

2. Plaintiff's claims in Counts Five and Six be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.
3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS SO ORDERED AND RECOMMENDED.**

Date: September 1, 2026

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).